No. 24-3492

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

Michael Mogan
Plaintiff-Appellant,

v.

State Bar Of California; GEORGE CARDONA, in his official capacity as
Chief Trial Counsel For the State Bar of California, and in his individual capacity;
CHRISTOPHER JAGARD, in his official capacity as Deputy Chief Trial
Counsel for the Office of the Chief Trial Counsel and in his individual capacity;
KEVIN TAYLOR, in his in his official capacity as Assistant Chief Trial Counsel
for the Office of the Chief Trial Counsel and in his individual capacity;
ELIZABETH STINE, in her official capacity as Supervising Attorney and for
the Office of the Chief Trial Counsel and in his individual capacity; LEAH T.
WILSON, in her official capacity as the executive director for the State Bar Of
California and in her individual capacity; RUBEN DURAN, in his official capacity
as a member of the State Bar of California Board of Trustees and in his
individual capacity; BRANDON STALLINGS in his official capacity as a
member of the State Bar of California Board of Trustees and in his individual
capacity; MARK BROUGHTON, in his official capacity as a member of the
State Bar of California Board of Trustees and in his individual capacity;
RAYMOND BUENAVENTURA, in his Official capacity as a member of
the State Bar of California Board of Trustees and in his individual capacity;
HAILYN CHEN, in her official capacity as a member of the State Bar of
California Board of Trustees and in his individual capacity; JOSE CISCEROS,
in his official capacity as a member of the State Bar of California Board of
Trustees and in his individual capacity; Sarah Good, in her official capacity as
a member of the State Bar of California Board of Trustees and in his individual
capacity; GREGORY KNOLL, in his official capacity as a member of the State
Bar of California Board of Trustees and in his individual capacity; MELANIE M.
SHELBY, in her official capacity as a member of the State Bar of California
Board of Trustees and in his individual capacity; ARNOLD SOWELL JR., in his
official capacity as a member of the State Bar of California Board of Trustees
and in his individual capacity; MARK WTONEY, in his official capacity as a

member of the State Bar of California Board of Trustees and in his individual
capacity; GENARO TREJO, in his official capacity as a member of the
State Bar of California Board of Trustees and in his individual capacity;
PATRICIA GUERRERO, Chief Justice of the California Supreme Court; CAROL
A. CORRIGAN, Associate Justice of the California Supreme Court; GOODWIN
H. LIU, Associate Justice of the California Supreme Court; LEONDRA R.
KRUGEN,  Associate Justice of the California Supreme Court; JOSHUA P.
GROBAN,  Associate Justice of the California Supreme Court; MARTIN J.
JENKINS,  Associate Justice of the California Supreme Court; KELLI EVA,
Associate Justice of the California Supreme Court.

Defendants-Appellees.

---

On Appeal from the United States District Court for the
Central District of California
No. CV 23-930-MWF(PDx)
Honorable Michael W. Fitzgerald, Judge Presiding

---

APPELLANT'S OPENING BRIEF

---

Michael Mogan
4803 N. Milwaukee Ave, Suite B, Unit #244
Chicago, IL 60657
Telephone: (773) 799-8477
mm@michaelmogan.com

# TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………………………1

JURISDICTIONAL STATEMENT………………………………………….2

ISSUES PRESENTED FOR REVIEW…………………………………….3

STATEMENT OF THE CASE……………………………………………….3

STANDARD OF REVIEW…………………………………………...5,35

SUMMARY OF THE ARGUMENT………………………………………7

A. Appellant alleged Claims Under the ADA and the Rehabilitation Act…………8

   1. Elements of an ADA and Rehabilitation Act Claim………………………...9
   2. The State Bar Individual Appellees in Their Official Capacities May Be Sued for Prospective Injunctive Relief Under Title II of the ADA and §504 of the Rehabilitation Act And Compensatory Damages………...12
   3. Abrogation Of Sovereign Immunity Is Not Limited To Instances Where There Is A Constitutional Violation…………………………………..15
   4. In Enacting Title II, Congress Had Ample Evidence Of Official Discrimination Justifying The Exercise Of Its Section Five Powers………20
   5. Title II Is A Congruent And Proportional Response To The Constitutional Rights And The History Of Discrimination At Issue………22
   6. The State Sovereign Immunity Doctrine Does Not Bar The ADA Claims………………………………………………………………24
   7. Discovery Was Necessary To Address Appellees Factual Challenge To The Rehabilitation Act Claim……………………………………..32
   8. Appellant Was Entitled To Seek Monetary Damages……………………...33

   B. The District Court Erred Dismissing The 1983 Claim In The First Amended Complaint……………………………………………………34

   C. The Equal Protection Claim under 42 U.S.C. §1983 Is Not Barred By The Eleventh Amendment As Appellant Alleged Prospective Relief…………………………………………………………………38

**Page**

D. The First Amendment Claim Under 42 U.S.C. §1983 Is Not Barred
By The Eleventh Amendment As Appellant Alleged Prospective
Relief…………………………………………………………………….43

E. The Third, Fourth, and Fifth Causes of Action Alleges A Claim Since
The California State Bar Compels Membership and Payment of Dues
And The First Amendment Prohibits A State From Compelling
Attorneys To Join And Fund A State Bar Association That Engages
In Extensive Political and Ideological Activities…………………………..45

F. Appellant Alleged A Sherman Act Section 2 Claim and Appellees
Are Not Immunized from Antitrust Liability Under the State Action
Immunity Doctrine……………………………………………………………52

G. Appellant Should Have Been Granted Leave To Amend the Complaint…..59

CONCLUSION……………………………………………………………...60

CERTIFICATION OF RELATED CASES………………………………………61

CERTIFICATE OF COMPLIANCE…………………………………………...62

CERTIFICATE OF SERVICE……………………………………………………63

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aguilar v. Tex. Dep't of Criminal Justice,*
160 F.3d 1052 (5th Cir. 1998)………………………………………...64

*Alden v. Maine,*
527 U.S. 706 (1999)……………………………………………….24,31

*A.L.A. v. West Valley City,*
26 F.3d 989 (10th Cir. 1994)………………………………………….36

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988)…………………………………………………..56

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40 (1999)…………………………………………………...38

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)…………………………………………………55

*Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.,*
405 F.3d 954 (11th Cir. 2005)……………………………………...17

*Atascadero State Hospital v. Scanlon,*
473 U.S. 234 (1985)…………………………………………………25

*Bartlett v. N.Y. State Bd. of Law Examiners,*
156 F.3d 321, 331 (2d Cir. 1998), vacated on other grounds,
527 U.S. 1031(1999)………………………………………………15

*Barry v. City of New York,*
712 F.2d 1554 (2d Cir.), cert. denied, 464 U.S. 1017 (1983)………..…..35

*Bd. of Trustees of the Univ. of Alabama v. Garrett,*
531 U.S. 356 (2001)…………………………………………………16

*Bircoll v. Miami-Dade Cty.,*
480 F.3d 1072 (11th Cir. 2007)………………………………………..9

**Page(s)**

*Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.*,
133 F.3d 816 (11th Cir. 1998)…………………………………………...21

*Board of Trustees, University of Alabama v. Garrett*,
531 U.S. 356 (2001)…………………………………………………17,27

*Bresaz v. Cnty. of Santa Clara*,
136 F. Supp. 3d 1125 (N.D. Cal. 2015)…………………………………11

*Brooke v. Kashl Corp.*,
362 F. Supp. 3d 864 (S.D. Cal. 2019)……………………………………6

*Brooke v. Superb Hosp., LLC*,
No. 1:20-CV-0103 AWI SAB,
2021 WL 1173208 (E.D. Cal. Mar. 29, 2021)……………………………6

*Borucki v. Ryan*,
827 F.2d 836 (1st Cir.1987)…………………………………………..36

*Calzone v. Summers*,
942 F.3d 415 (8th Cir. 2019)……………………………………………50

*Canatella v. State of California*,
304 F.3d 843 (9th Cir. 2002)……………………………………………13

*City of Boerne v. Flores*,
521 U.S. 507(1997)…………………………………………………..20,26

*Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985)…………………………………………………23,39

*Clubside, Inc. v. Valentin*,
468 F.3d 144 (2d Cir.2006)…………………………………………...39

*Constantine v. Rectors, George Mason Univ*,
411 F.3d 474 (4th Cir. 2005)……………………………………………20

*Crowe v. Oregon State Bar*,
989 F.3d 714 (9th Cir. 2021)……………………………………………48

**Page(s)**

*Davis v. New York,*
316 F.3d 93 (2d Cir. 2002)……………………………………………12

*DCD Programs, Ltd. v. Leighton,*
833 F.2d 183 (9th Cir. 1987)………………………………………39,60

*Del Marcelle v. Brown Cnty. Corp.,*
680 F.3d 887 (7th Cir. 2012)…………………………………………42

*Dep't of Educ. v. Brown,*
600 U.S. 551 (2023)…………………………………………………..43

*Doe v. City of N.Y.,*
15 F.3d 264 (2d Cir.1994)……………………………………………36

*Douglas v. United States,*
814 F.3d 1268 (11th Cir. 2016)………………………………………33

*Duvall v. County of Kitsap,*
260 F.3d 1124 (9th Cir. 2001)……………………………………...34

*Eaton v. Dorchester Dev., Inc.,*
692 F.2d 727 (11th Cir. 1982)……………………………………7,33

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir)……………………………………………..59

*Estate of Sims ex rel. Sims v. Cty. of Bureau,*
506 F.3d 509 (7th Cir. 2007)…………………………………………37

*Ex parte Young,*
209 U.S. 123 (1908)……………………………………………...passim

*Ferguson v. City of Phoenix,*
157 F.3d 668 (9th Cir. 1998)………………………………………..34

**Page(s)**

*Foman v. Davis,*
371 U.S. 178 (1962)……………………………………………………..59

*Fulton v. Goord,*
591 F.3d 37 (2d Cir. 2009)…………………………………………….8

*FTC v. Phoebe Putney Health Sys., Inc.,*
568 U.S. 216 (2013)…………………………………………………..53

*Gardner v. State Bar of Nevada,*
284 F.3d 1040 (9th Cir. 2002)……………………………………...47

*Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,*
280 F.3d 98 (2d Cir.2001)……………………………………...13,15,33

*Garrett v. Univ. of Ala. Birmingham Bd. of Trs.,*
344 F.3d 1288 (11th Cir. 2003)………………………………………32

*Goldfarb v. Virginia State Bar,*
421 U.S. 773 (1975)…………………………………………………..58

*Green v. Mansour,*
474 U.S. 64 (1985)……………………………………………………18

*Guttman v. Khalsa,*
669 F.3d 1101 (10th Cir. 2012)………………………………………16

*Hans v. Louisiana,*
134 U.S. 1 (1890)…………………………………………………..24

*Harris v. Mills,*
572 F.3d 66 (2d Cir. 2009)…………………………………………12

*Henrietta D. v. Bloomberg,*
331 F.3d 261 (2d Cir. 2003)………………………………………….8

*Herring v. Keenan,*
218 F.3d 1171 (10th Cir. 2000)………………………………………35

**Page(s)**

*Hess v. Port Auth. Trans-Hudson Corp.,*
    513 U.S. 30 (1994)……………………………………………...31,32

*Hirsh v. Justices of the Supreme Ct. of Cal., et al.,*
    67 F.3d 708 (9th Cir. 1995)……………………………………...35

*Hodgers-Durgin v. De La Vina,*
    199 F.3d 1037 (9th Cir. 1999)…………………………………..45

*Hoover v. Ronwin,*
    466 U.S. 558 (1984)……………………………………………..56

*Houston v. Marod Supermarkets, Inc.,*
    733 F.3d 1323 (11th Cir. 2013)………………………………….32

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,*
    138 S. Ct. 2448 (2018)…………………………………………..36

*Johnson v. City of Saline,*
    151 F.3d 564 (6th Cir. 1998)……………………………………21

*Keller v. State Bar of California,*
    496 U.S. 1 (1990)……………………………………………...passim

*Keenan v. Tejeda,*
    290 F.3d 252 (5th Cir. 2002)……………………………………44

*Kentucky v. Graham,*
    473 U.S. 159 (1985)…………………………………………….29,38

*Kimel v. Florida Board of Regents,*
    528 U.S. 62 (2000)……………………………………………….22

*Klingler v. Director, Dept. of Revenue,*
    455 F.3d 888 (8th Cir. 2006)……………………………………19

*Lafayette v. La. Power & Light Co.,*
    435 U.S. 389 (1978)…………………………………………….53,55

**Page(s)**

*Lankford v. City of Hobart,*
  27 F.3d 477 (10th Cir.1994)………………………………………………..36

*Lathrop v. Donohue,*
  367 U.S. 820 (1961)………………………………………………………..45

*Lavernia v. Lynaugh,*
  845 F.2d 493 (5th Cir.1988)………………………………………………..39

*Lefebure v. D'Aquilla,*
  15 F.4th 650 (5th Cir. 2021)………………………………………………..41

*League of Women Voters of Chi. v. City of Chi.,*
  757 F.3d 722 (7th Cir. 2014)………………………………………………37

*Lewis v. Clarke,*
  581 U.S. 155 (2017)………………………………………………………..29

*Liese v. Indian River Cty. Hosp. Dist.,*
  701 F.3d 334 (11th Cir. 2012)………………………………………………9

*Lindquist v. City of Pasadena Texas,*
  669 F.3d 225 (5th Cir. 2012)………………………………………………52

*Lone Star Fund V (US.), L.P. v. Barclays Bank PLC,*
  594 F.3d 383 (5th Cir. 2010)………………………………………………...6

*Lund v. Cowan,*
  5 F.4th 964 (9th Cir. 2021)………………………………………………38

*Lupert v. Cal. State Bar,*
  761 F.2d 1325 (9th Cir. 1985)………………………………………………...35

*Lyng v. Northwest Indian Cemetery Protective Ass'n,*
  485 U.S. 439 (1988)………………………………………………………..14

**Page(s)**

*Martinez v. New York State Div. of Hum. Rts.,*
No. 1:13-CV-1252-GHW, 2015 WL 437399 (S.D.N.Y. Feb. 2, 2015)......10

*McElwee v. Cnty. of Orange,*
700 F.3d 635 (2d Cir. 2012).…………………………………………….8

*Mentele v. Inslee,*
916 F.3d 783 (9th Cir. 2019).…………………………………………….50

*Mikeska v. City of Galveston,*
451 F.3d 376 (5th Cir. 2006).…………………………………………….42

*Minn. Voters Alliance v. Mansky,*
138 S. Ct. 1876 (2018).…………………………………………………..48

*Monell v. Department of Social Services,*
436 U.S. 658 (1978).…………………………………………………….36

*Mote v. City of Chelsea,*
284 F. Supp. 3d 863 (E.D. Mich. 2018)…………………………………20

*Naffe v. Frey,*
789 F.3d 1030 (9th Cir. 2015).…………………………………………..6

*National Ass'n of Bds. of Pharmacy v. Board of Regents of*
*the Univ. Sys. of Ga.,*
633 F.3d 1297 (11th Cir. 2011).………………………………………….22

*Nat'l Ass'n for Gun Rights, Inc. v. Mangan,*
933 F.3d 1102 (9th Cir. 2019).……………………………………….....50

*Nevada Dep't of Human Res. v. Hibbs,*
538 U.S. 721 (2003).…………………………………………………….15

*Northern Insurance Co. v. Chatham County,*
547 U.S. 189 (2006).…………………………………………………….31

**Page(s)**

*Novell, Inc. v. Microsoft Corp.,*
    731 F.3d 1064 (10th Cir. 2013)…………………………………………….52

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001)……………………………………………….51

*Papasan v. Allain,*
    478 U.S. 265 (1986)………………………………………………………..38

*Pesce v. J. Sterling Morton High Sch.,*
    830 F.2d 789 (7th Cir.1987)………………………………………………..36

*F.T.C. v. Phoebe Putney Health Sys., Inc.,*
    568 U.S. 216 (2013)……………………………………………...passim

*Plyler v. Doe,*
    457 U.S. 202 (1982)………………………………………………………..24

*Powell v. Nat'l Bd. of Med. Exam'rs*,
    364 F.3d 79 (2d Cir.)………………………………………………………11

*R. W. v. Columbia Basin Coll.*,
    77 F.4th 1214 (9th Cir. 2023)……………………………………………..13

*Regents of the Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997)……………………………………………………22,31

*Renner v. Supreme Ct. of Fla.,*
    No. 19-14981, 2022 WL 1658361 (11th Cir. May 25, 2022)……………...16

*Romero v. Colegio Abogados Puerto Rico*,
    204 F.3d 291 (1st Cir. 2000)……………………………………………….48

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)………………………………………………6

**Page(s)**

*Sato v. Orange Cty. Dep't of Educ.,*
   861 F.3d 923 (9th Cir. 2017)……………………………………………5

*Schine by Short v. NY State Off. for People with Developmental Disabilities*,
   No. 15-CV-5870, 2017 WL 9485650 (E.D.N.Y. Jan. 5, 2017)……………9

*Seminole Tribe of Fla. v. Fla.,*
   517 U.S. 44 (1996)……………………………………………………25

*Silva v. Baptist Health S. Fla., Inc.,*
   856 F.3d 824 (11th Cir. 2017)…………………………………………9

*Somers v. Apple*, Inc.,
   729 F.3d 953 (9th Cir. 2013)…………………………………………...7

*Steffel v. Thompson*,
   415 U.S. 452 (1974)…………………………………………………..44

*Taylor v. Buchanan*,
   4 F.4th 406 (6th Cir. 2021)……………………………………………51

*Tennessee v. Lane*,
   541 U.S. 509 (2004)………………………………………………...passim

*Thorne v. City of El Segundo*,
   726 F.2d 459 (9th Cir.1983), cert. denied, 469 U.S. 979 (1984)…………..35

*Town of Hallie v. Eau Claire*,
   471 U.S. 34 (1985)……………………………………………………57

*Tsombanidis v. West Haven Fire Dep't*,
   352 F.3d 565 (2d Cir. 2003)…………………………………………..11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)……………………………………………………7

*United States v. Georgia*
   546 U.S. 151 (2006)………………………………………………...passim

**Page(s)**

*United States v. Grinnell Corp.,*
    384 U.S. 563 (1966)……………………………………………………..52

*United States v. Westinghouse Elec. Corp.,*
    638 F.2d 570 (3d Cir.1980)……………………………………………...36

*Va. Office for Prot. & Advocacy v. Stewart,*
    563 U.S. 247 (2011)…………………………………………………..29

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,*
    535 U.S. 635 (2002)…………………………………………………..30

*Webster v. City of Houston,*
    689 F.2d 1220 (5th Cir. 1982)…………………………………..40,42

*Wendt v. 24 Hour Fitness USA, Inc.,*
    821 F.3d 547 (5th Cir. 2016)………………………………………40

*West v. Atkins,*
    487 U.S. 42 (1988)………………………………………………39

*Whalen v. Roe,*
    429 U.S. 589 (1977)……………………………………………..35

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989)………………………………………………29

*Wong v. Regents of Univ. of Cal.,*
    192 F.3d 807 (9th Cir.1999)……………………………………..18

*Wood v. City of San Diego,*
    678 F.3d 1075 (9th Cir. 2011)…………………………………….6

*Woodward v. Corr. Med. Serv. of Ill., Inc.,*
    368 F.3d 917 (7th Cir. 2004)…………………………………….37

*Woolf v. Strada,*
    949 F.3d 89 (2d Cir. 2020)……………………………………….10

**Page(s)**

**State Cases**

*In the Matter of Wilson,*
106 Ariz. 34 (1970)……………………………………………………...59

**Federal Statutes**

15 U.S.C. §2……………………………………………………………passim
28 U.S.C. §1291……………………………………………………………2
28 U.S.C. §1331……………………………………………………………2
29 U.S.C. §705(20)(B)……………………………………………………10
29 U.S.C. §794(a)………………………………………………………...8,9
42 U.S.C. §12101…………………………………………………………passim
42 U.S.C. §12101(a)(3)…………………………………………20,21,23
42 U.S.C. §12102(1)…………………………………………………...10,11
42 U.S.C. §12102(1)(A)…………………………………………………10
42 U.S.C. §12131(1)(B)…………………………………………………20
42 U.S.C. §12131(2)………………………………………………………10
42 U.S.C. §12132……………………………………………………9,21,22,27
42 U.S.C. §12202…………………………………………………………26
42 U.S.C. §12203(c)……………………………………………………....12
42 U.S.C. §1983………………………………………………………passim
42 U.S.C. §2000d-7……………………………………………………15
§504 of the Rehabilitation Act of 1973………………………………passim
U.S. CONST. art. 1, § 8, cl. 1…………………………………….……15
U.S. Const. amend. XIV, §1……………………………………………passim
U.S. Const., Amdt. 14, §5………………………………………………passim

**State Statutes**

Unruh Civil Rights Act, Cal. Civ. Code§51………………………………...2,3

**Rules**

Fed. R. App. P. 4(b)(4)……………………………………………………..2
Fed. R. Civ. P. 8(a)(3)……………………………………………………12
Fed. R. Civ. P Rule 12(b)(1)……………………………………5,6,32
Fed. R. Civ. P Rule 12(b)(6)……………………………………………5,6
Fed. R. Civ. P Rule 56……………………………………………………...6

**Other Authorities**

1A PHILLIP E. AREEDA & HERBERT HOVENKAMP,
ANTITRUST LAW (4th ed. 2013)………………………………………...54

## INTRODUCTION

The District Court erred when it dismissed Michael Mogan ("Appellant") claims under the ADA and Section 504 of the Rehabilitation Act of 1973 in the second amended complaint ("SAC") which claims were based on intentional discrimination, disparate impact and denial of reasonable accommodation requests. The District Court failed to determine whether, in enacting Title II, and the Rehabilitation Act Congress validly abrogated state sovereign immunity as to the specific class of conduct at issue.

The District Court also erred in dismissing Appellant's 42 U.S.C. §1983 and the Fourteenth Amendment to the U.S. Constitution claim and separate 1983 claims in the SAC under the First Amendment and Equal Protection Clause which sought prospective relief and were not barred by the Eleventh Amendment. Appellant's as applied constitutional challenge to mandatory bar dues alleged Appellees continually engaged in a wide range of political and ideological activities including disability rights violations was also dismissed in error. Finally, the State Bar is a non-sovereign state actor thus not entitled to antitrust immunity for their Violations of the Sherman Act, 15 U.S.C. §2 and this claim based on the State Bar's continued anticompetitive conduct was well plead.

## JURISDICTIONAL STATEMENT

This Court has subject matter jurisdiction over the claim in the first amended complaint ("FAC") pursuant to 28 U.S.C. §1331 as Appellant alleged a claim under Americans with Disabilities Act, as amended, Title II, 42 U.S.C. §§ 12101, et seq. ("ADA") where he sought compensatory, nominal and other damages pursuant to 42 U.S.C. §1983, for the State Bar's deprivation of Appellant's rights, privileges, or immunities secured by the Constitution and federal laws. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Appellant's Unruh Civil Rights Act, Cal. Civ. Code§§ 51, et seq. The District Court dismissed Appellant's 42 U.S.C. §1983 claim without leave to amend and granted leave to amend his ADA claim while dismissing the Unruh Civil Rights Act claim without prejudice. 2-ER-19-28. This Court has subject matter jurisdiction over the claims in the second amended complaint pursuant to 28 U.S.C. §1331 which the District Court dismissed with prejudice (2-ER-13-18) as Appellant alleged equal protection and first amendment claims 42 U.S.C. §1983, several claims under First and Fourteenth Amendment of the U.S. Constitution and Appellant alleged an ADA claim pursuant to §504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 and Appellant alleged a Claim For Violations of §2 of the Sherman Act, 15 U.S.C. §2. Appellant timely filed a notice of appeal June 1, 2024. 4-ER-476-507. Fed. R. App. P. 4(b)(4). This Court has jurisdiction under 28 U.S.C. §1291.

## ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred dismissing the 42 U.S.C. Section 1983 and the Fourteenth Amendment Of the U.S. Constitution as alleged in the first amended complaint on sovereign immunity grounds.

2.     Whether the District Court erred granting the Appellee State Bar's motion to dismiss the second amended complaint with prejudice.

3.     Whether Appellant should have been granted leave to amend the second amended complaint.

## STATEMENT OF THE CASE

Appellant filed a complaint (2-ER31-48) and first amended complaint against the Appellee State Bar (2-ER49-69) and they filed a motion to dismiss. 2-ER72-97 The FAC prayed for relief in the form of declaratory relief, injunctive relief, compensatory damages, nominal damages, and attorneys' fees and costs.  2-ER67-69. The District Court granted the motion to dismiss and dismissed Appellant's 1983 claim with prejudice which claim were primarily based on the Appellee State Bar's invasion of Appellant's privacy rights and the District Court dismissed Appellant's Title II ADA claim and Unruh Civil Rights Act claim without prejudice. 1-ER-19-28. On July 28, 2023 Appellant filed the SAC that included claims for (1) an Equal Protection Claim under 42 U.S.C. §1983 and (2) A First Amendment Claim against Appellees George Cardona, Christopher Jagard,

3

Kevin Taylor, Elizabeth Stine, Leah T. Wilson ("State Bar Non-Board Appellees") and Ruben Duran, Brandon Stallings, Mark Broughton, Raymond Buenaventura, Hailyn Chen, Jose Cisneros, Sarah Good, Gregory Knoll, Melanie M. Shelby, Arnold Sowell Jr., Mark W. Toney, and Genaro Trejo ("CA Bar Board Members") where all were sued in their official capacity. 2-ER170-172, 210-219. Appellant filed a third claim for Compelled Membership in the State Bar Violates Attorneys' First and Fourteenth Amendment Rights To Free Association and Free Speech against Honorable Patricia Guerrero, Honorable Carol A. Corrigan, Honorable Goodwin H. Liu, Honorable Leondra R. Kruger, Honorable Joshua P. Groban, Honorable Martin J. Jenkins and Honorable Kelli Evais ("California Supreme Court Appellees"), where all members of the California Supreme Court which were sued in their official capacity (2-ER-173), and Appellant named the Appellee CA Bar Board Members here as well in their official capacities. 2-ER220. Appellant filed a fourth claim for the collection and use of mandatory bar dues to subsidize the California State Bar's speech, including its political and ideological speech, violate Appellant's First and Fourteenth Amendment rights to free speech and association (2-ER221-223); and a fifth claim for The California State Bar Violates Plaintiff's First and Fourteenth Amendment rights by Failing To provide Safeguards To Ensure Mandatory Dues Are Not Used For Impermissible Purposes and both the forth and fifth claims were alleged against the California Supreme

Court Appellees and CA Bar Board Members. 2-ER224-226. Appellant filed a

sixth claim against Appellee State Bar and the CA Non-Board Members for

Monopolization, attempted monopolization, and combination and conspiracy to

monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. §2 (2-ER226-

230) and Appellant's seventh claim for violations under Title II of the ADA (2-

ER230-236) and eight claim for Violation of Section 504 of the Rehabilitation Act

of 1973, 29 U.S.C. 794 were filed against these same Appellees. 2-ER236. The

Appellee State Bar, CA State Bar Non-Board Appellees and CA Bar Board

Members filed a second motion to dismiss (3-ER-281-326) which the District

Court granted with prejudice as to all claims in the second amended complaint. 1-

ER3-18. The California Supreme Court Appellees had not timely answered the

complaint before the District Court dismissed the second amended complaint. 3-

ER416-472.

## STANDARD OF REVIEW

An Eleventh Amendment defense "is quasi-jurisdictional' in nature and may

be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cty. Dep't*

*of Educ.*, 861 F.3d 923, 927 (9th Cir. 2017). Although the defendant is the moving

party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party

invoking the court's jurisdiction. As a result, the plaintiff bears the burden of

proving that the case is properly in federal court. *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871(S.D. Cal. 2019)

A jurisdictional attack under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the complaint's allegations must be accepted as true. Id. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. "The court need not presume the truthfulness of the plaintiff's allegations under a factual attack." *Brooke v. Superb Hosp., LLC*, No. 1:20-CV-0103 AWI SAB, 2021 WL 1173208, at *4 (E.D. Cal. Mar. 29, 2021)(citing *Wood v. City of San Diego*, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011)). For its Rule 12(b)(6) review, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss that are central to the plaintiffs claims and referenced in the complaint. *Lone Star Fund V (US.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The Court reviews de novo the dismissal of a lawsuit, whether under Rules 12(b)(1), 12(b)(6) or 56. *Naffe v. Frey,* 789 F.3d 1030, 1035(9th Cir. 2015). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a

cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.,* 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim for relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,570 (2007)

## SUMMARY OF THE ARGUMENT

The District Court misapplied the *United States v. Georgia* inquiry which holds that abrogation is unquestionably proper for conduct that violates Title II and would also violate the Fourteenth Amendment. 546 U.S. 151, 159 (2006). Appellant had alleged Appellees acted with deliberate indifference in denying Appellant reasonable accommodations and he alleged multiple discriminatory against him thus he was also entitled to seek relief for money damages under the ADA and §504 of the Rehabilitation Act as the California State Bar is a recipient of federal funds. Under *Tennessee v. Lane,* 541 U.S. 509 (2004), Eleventh Amendment immunity is also abrogated for cases "implicating the fundamental right of access to the courts." Id. at 533-34 Appellant should have been given an opportunity to conduct jurisdictional discovery prior to the dismissal of his ADA and §504 of the Rehabilitation Act claims. *Eaton v. Dorchester Dev., Inc*., 692 F.2d 727, 731 (11th Cir. 1982).

Appellants 1983 claims sought prospective relief which violations were ongoing thus and barred by the Eleventh Amendment. Appellant's as applied constitutional challenge to mandatory bar dues alleged Appellees continually engaged in a wide range of political and ideological activities including disability rights violations was also dismissed in error. Appellees State Bar's unlawful conduct alleged does not flow from any legislative authority and clearly has an anticompetitive effect thus Appellant a Claim For Violations of §2 of the Sherman Act, 15 U.S.C. §2.

## ARGUMENT

### A. Appellant alleged Claims Under the ADA and the Rehabilitation Act

Under Title II of the ADA and §504 of the Rehabilitation Act, "failure to make a reasonable accommodation[,]" *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009), is a theory of discrimination that can be used to establish a claim based on disability discrimination. Although the ADA and the Rehabilitation Act are "nearly identical[,]" *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012), there are two differences. First, "all public entities are subject to Title II, whereas Section 504 of the Rehabilitation Act applies only to those institutions 'receiving Federal financial assistance. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)(quoting 29 U.S.C. §794(a)). Second, "the reach of the Rehabilitation Act is limited to denials of benefits 'solely by reason of…disability,'

8

while the ADA applies more broadly to such denials 'by reason of…disability.'
" *Schine by Short v. New York State Off. for People with Developmental Disabilities*, No. 15-CV-5870, 2017 WL 9485650, at *4 (E.D.N.Y. Jan. 5, 2017)(quoting 29 U.S.C. §794(a)); 42 U.S.C. §12132. These claims were brought against the Appellee State Bar and CA State Bar Non-Board Members.

### 1. Elements of an ADA and Rehabilitation Act Claim

To state a plausible claim under the ADA and Rehabilitation Act, Appellant must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). 2-ER200-210 & ER230-236; SAC ¶¶123-165;239-277. In the ordinary course, proof of a Title II or §504 violation entitles a plaintiff only to injunctive relief. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir. 2017). To get damages, a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of "deliberate indifference." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012). "Additionally, to establish a violation

9

under [Section 504 of the RA], a plaintiff must show that the [public entity] receive[s] federal funding." *Henrietta D.*, 331 F.3d at 272.

"For purposes of determining whether an ADA plaintiff is a 'qualified individual with a disability,' 42 U.S.C. §12131(2), the ADA defines 'disability' to include, *inter alia*, 'a physical or mental impairment that substantially limits one or more major life activities[.]' *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) quoting 42 U.S.C. §12102(1)(A))). "The Rehabilitation Act defines the term 'individual with a disability' by cross reference to the [ADA]." *Martinez v. New York State Div. of Hum. Rts.*, No. 1:13-CV-1252-GHW, 2015 WL 437399, at *5 (S.D.N.Y. Feb. 2, 2015)(29 U.S.C. §705(20)(B); 42 U.S.C. §12102(1))). Appellant alleged he has an episodic neurological disability which is a disability recognized under the ADA that limits one or more major life activities, including sleeping, communicating, concentration, thinking, and interacting with others. (2-ER-200; SAC ¶123)  The ADA claim was not dismissed in the FAC on any such grounds by the District Court Appellant had also provided the District Court and Appellees with his medical records confirming such disability. See 4-ER-550-556. Neurologocal indicated brain and episodes indicated seizures as were the specific impairment on his major life activities. The ADAAA instructs courts to interpret the "substantially limits" requirement broadly, and accompanying regulations specify that " '[s]ubstantially limits' is not meant to be a demanding standard." 29

C.F.R. § 1630.2(j)(1)(i). A person has a "disability" under the ADA if he has: (a) "a physical or mental impairment that substantially limits one or more [of his] major life activities," (b) "a record of such an impairment," or (c) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating ... and working." 42 U.S.C. § 12102(2). In *Bresaz v. Cnty. of Santa Clar*a, 136 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) the Court concluded the operative complaint contained no allegations that the Decedent suffered from a specific mental disorder or that the Decedent was ever medically diagnosed with having a specific mental disorder and that the amended complaint at issue no longer even alleged that the Decedent "had a history of mental illness for which he had taken prescription medication for.

A qualified individual can base a discrimination claim on: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.' *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). A "reasonable accommodation" is one that would permit a qualified disabled individual "to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004). Appellant alleged intentional discrimination and disparate impact as well as denial of requests for

reasonable accommodations. 2-ER-201-203,206,210. SAC ¶¶128, 129,

130,131,134,149,164 and 165. Appellant also alleged he requested reasonable

accommodations that were denied; and that, as a result of this decision, he was, "as

a practical matter," *Henrietta D.*, 331 F.3d at 273, denied "meaningful access," *id.*,

to state services, programs, or activities. 2-ER201-203,207; SAC

¶¶128,129,130,132,133,134 and 151. Under 42 U.S.C. 12203(c) a State Bar

employee also interfered with such requests. 2-ER209; ¶161.

**2. The State Bar Individual Appellees in Their Official Capacities May Be Sued for Prospective Injunctive Relief Under Title II of the ADA and §504 of the Rehabilitation Act And Compensatory Damages**

Claims for declaratory and injunctive relief against state employees and

agents in their official capacities are not specifically barred by the Eleventh

Amendment. *Davis v. New York*, 316 F.3d 93, 101-02 (2d Cir. 2002). "Title II and

Rehabilitation Act suits for prospective injunctive relief may, under the doctrine

established in *Ex parte Young*, 209 U.S. 123 (1908), proceed against individual

officers in their official capacity." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.

2009) Under Fed. R. Civ. P. 8(a)(3), a complaint "may include relief in the

alternative or different types of relief" and Appellant's sought damages and

injunctive relief. 2-ER239-240; SAC ¶¶73-74.

For a suit to proceed under the Ex parte Young exception, the plaintiff must

allege—not prove—an ongoing violation of federal law for which [they] seek[ ]

prospective injunctive relief." R. *W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1221 (9th Cir. 2023) Specifically, to have Article III standing for prospective relief requires, among other things, a showing of "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way." *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002).

In *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98 (2d Cir.2001), the Court held that a private suit brought pursuant to Title II of the ADA for money damages can be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability. *Id.* at 111–12. While compensatory damages claims under §504 of the Rehabilitation Act are not precluded by the Eleventh Amendment, a plaintiff nevertheless must plead and prove "intentional violations" of the Rehabilitation Act. *Bartlett v. N.Y. State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *vacated on other grounds*, 527 U.S. 1031(1999). "The standard for intentional violations is 'deliberate indifference to the strong likelihood [of] a violation[.]' *Bartlett*, 156 F.3d at 331). Appellant alleged Appellee acted with deliberate indifference in denying Appellants requests for reasonable accommodations and in committing discriminatory acts against him. 2-ER201-203,206-207,210,231; SAC ¶¶128,129,130,131,132, 134,149,151,164,165 and 246. He alleged claims for money damages under the ADA and §504. Appellant alleged

Appellees specific egregious conduct (1) making discriminatory inquiries regarding his mental health diagnoses and treatment; (2) subjecting Appellant to burdensome supplemental investigations triggered by his mental health status or treatment as revealed during investigative processes; (3) making discriminatory insults to Appellant questioning his diagnosis based on stereotypes of persons with neurological disabilities; (4) by imposing additional financial burdens on Appellant as an individual with a disability; (5) failing to provide adequate confidentiality protections during the process of addressing his ADA requests for reasonable accommodations; and (6) implementing burdensome, intrusive, and unnecessary conditions on Appellant which were improperly based on his mental health diagnoses and treatment. 2-ER-231; SAC¶246.

Under *Tennessee v. Lane,* 541 U.S. 509(2004), the court held that Eleventh Amendment immunity is abrogated for cases "implicating the fundamental right of access to the courts." Id. at 533-34. Delaying resolution of these questions of ADA violations and disability harassment at the pleading stage is consistent with the "fundamental and longstanding principle of judicial restraint" that "courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).

Appellee State Bar and CA Bar non-board Appellees failed to engage in the further interactive process for Appellants reasonable accommodations to continue. 2-ER201-203. SAC ¶¶128,130,134.

In order to abrogate a State's sovereign immunity, Congress must (1) make "its intention to abrogate unmistakably clear in the language of the statute" and (2) act "pursuant to a valid exercise of its power under §5 of the Fourteenth Amendment." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003). The first requirement is met; for Section 504 of the Rehabilitation Act, Congress unequivocally expressed its "intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity." *Garcia*, 280 F.3d at 113 (citing 42 U.S.C. §2000d-7. As to the second requirement, Congress enacted the Rehabilitation Act pursuant to its authority under the Spending Clause in Article I of the Constitution. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d at 113 (2d Cir. 2001);citing U.S. CONST. art. 1, § 8, cl. 1). Appellees waived sovereign immunity based on an intentional relinquishment of a known right and privilege as Appellant alleged the State Bar received federal funds. 2-ER208-¶158.

### 3. Abrogation Of Sovereign Immunity Is Not Limited To Instances Where There Is A Constitutional Violation

In determining whether Congress has effected a valid abrogation of immunity, a court must: (1) "identify with some precision the scope of the

constitutional right at issue"; (2) "examine whether Congress identified a history and pattern of unconstitutional [conduct] by the States"; and (3) determine whether "the rights and remedies created by the ADA against the States" are "congruent and proportional to the targeted violation[s]." *Bd. of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 365, 368, 372, 374 (2001

Indeed, courts that have considered similar issues have determined that no such identification took place. See *Renner v. Supreme Ct. of Fla*., No. 19-14981, 2022 WL 1658361, at *6 (11th Cir. May 25, 2022)(based on the findings and purpose clause of the ADA, Congress did not find a history of unconstitutional discrimination of disabled people with regard to professional licensing); *Guttman v. Khalsa,* 669 F.3d 1101, 1118–1125 (10th Cir. 2012) (concluding Title II did not abrogate New Mexico's sovereign immunity in area of professional licensing in part because the legislative history of the ADA did not reveal a history of unconstitutional discrimination in that area).

Congress is also not just limited to barring actual constitutional violations when it passes legislation pursuant to its Section Five powers. Instead, Congress "may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Hibbs,* 538 U.S. at 727-728. And Congress may ban "practices that are discriminatory in effect, if

16

not in intent, notwithstanding that the Equal Protection Clause bans only

intentional discrimination. *Tennessee v. Lane*, 541 U.S. 509, 520 (2004).

The Supreme Court's decision in *U.S. v. Georgia* holds that abrogation is

unquestionably proper for conduct that violates Title II and would also violate the

Fourteenth Amendment. 546 U.S. 151, 159 (2006). But Georgia also instructed

courts to determine, on a case-by-case basis, whether Congress's purported

abrogation of sovereign immunity "is nevertheless valid" even as to misconduct

that "violated Title II but did not violate the Fourteenth Amendment." Id. And the

Eleventh Circuit has specifically upheld the abrogation of sovereign immunity

under Title II in the context of access to public education where there was no

independent constitutional violation at issue. *Association for Disabled Ams., Inc.*

*v. Florida Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005). In general States are not

required by the Equal Protection Clause "to make special accommodations for the

disabled," but this is true only "so long as their actions toward such individuals are

rational." *Board of Trustees, University of Alabama v. Garrett,* 531 U.S. 356, 367

(2001).

Courts determine whether abrogation was congruent and proportional by

applying a three-step test. *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d

954, 957 (11th Cir. 2005). First, courts identify which right or rights Congress

"sought to enforce when it enacted the ADA. Id. Second, courts look to "whether

there was a history of unconstitutional discrimination to support Congress's

determination that prophylactic legislation was necessary." Id. Third, courts

determine "whether Title II is an appropriate response to this history and pattern of

unequal treatment." Id. The question of what constitutes a reasonable

accommodation under the ADA "requires a fact-specific, individualized analysis of

the disabled individual's circumstances and the accommodations that might allow

him to meet the program's standards." *Wong v. Regents of Univ. of Cal.,* 192 F.3d

807, 818 (9th Cir.1999). *Green v. Mansour,* 474 U.S. 64, 68 (1985) 2-ER-181-

184,196-199; SAC ¶¶50-54,107-122.  Title II validly abrogated State Bar

Appellees sovereign immunity because the failure to provide reasonable

accommodations in seeking access to state services and also prior to and during

administrative proceedings violates Appellant's right to access public services.

Appellant alleged egregious discriminatory acts and disparate treatment. Thus even

if no fundamental right to the courts were implicated, Congress validly abrogated

Appellee's immunity for these claims of discrimination under the ADA as

Appellant was denied access to public services.

The District Court failed to determine whether, in enacting Title II, Congress

validly abrogated state sovereign immunity as to the specific class of conduct at

issue and the District Court misapplied the U.S. v. *Georgia* inquiry.

The *Georgia* inquiry first asks courts to determine "which aspects of the State's

18

alleged conduct violated Title II." 546 U.S. at 159. Here, Appellant alleged the conduct at issue but the District Court did not evaluate which aspects of the alleged conduct, if any, violated Title II. The District Court did not answer the question of which, if any, of Appellant's allegations state a Title II claim. It also did not provide any reasoning supporting its conclusion that Congress did not prophylactically abrogate sovereign immunity as to Appellant's claims. The District Court's *U.S. v Georgia* analysis thus focused only on the second part of the *Georgia* test, but this part of the *Georgia* test cannot stand alone as a reason to dismiss a claim on sovereign immunity grounds. It is not enough for the District Court to hold that the complaint does not allege a constitutional violation and end there. Even if the complaint does not allege a constitutional violation, the Court must determine whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *See Klingler v. Director, Dept. of Revenue*, 455 F.3d 888, 894 (8th Cir. 2006) The District Court thus erred when it failed to determine "which aspects of the State's alleged conduct violated Title II." *Georgia*, 546 U.S. at 159. While the district court is not bound to analyze the *Georgia* inquiry in any particular order, it cannot begin and end its analysis with the second part of the *Georgia* test. The prophylactic abrogation analysis is fact-intensive, requiring a review of whether there is "congruence and proportionality between the injury to be prevented or remedied and the means

adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997), but the

District Court did not engage in this analysis, leaving us to guess which

of Appellant's allegations, if any, were being considered for this "congruence and

proportionality" inquiry.

### 4. In Enacting Title II, Congress Had Ample Evidence Of Official Discrimination Justifying The Exercise Of Its Section Five Powers

Congress' finding in the ADA that "discrimination against individuals with

disabilities persists in such critical areas as...access to public services,"

§12101(a)(3), together with the extensive record of disability discrimination that

underlies it, makes clear that inadequate provision of public services and access to

public facilities was an appropriate subject for prophylactic legislation. Congress

was not required to make a record of official discrimination for every context in

which Title II may validly apply. Title II applies to all public services, programs,

and activities. *Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 879 (concluding Title

II properly abrogated sovereign immunity as applied to equal access to publicly-

maintained sidewalks and curb ramps) Moreover, the Fourth Circuit gave no

indication in *Constantine v. Rectors, George Mason Univ,* 411 F.3d 474 (4th Cir.

2005) that public education is the lone exception to a general rule

against abrogating non-fundamental rights for a non-suspect class.  The text of

the ADA is deliberately broad and the California State Bar falls 'squarely within

the statutory definition of a "public entity. *see* 42 U.S.C. §12131(1)(A)-

(B)(defining "public entity" to include, among other things, "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government"). Furthermore, persuasive precedent indicates that the ADA's reference to "the services, programs, and activities of a public entity" should likewise be interpreted broadly "to 'encompass[ ]virtually everything that a public entity does. *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998). Fortunately, §12132 is framed in the alternative. The "subjected to discrimination" phrase in Title II is "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." *Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.*, 133 F.3d 816, 821-22 (11th Cir. 1998).

In *Lane*, the Court remarked on the "sheer volume of evidence demonstrating the nature and extent of unconstitutional discrimination against persons with disabilities in the provision of public services," 541 U.S. at 528, including in the areas of "education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services," id. at 529 (quoting 42 U.S.C. §12101(a)(3)). The Court concluded it is "clear beyond peradventure that inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation." Id.

5. **Title II Is A Congruent And Proportional Response To The Constitutional Rights And The History Of Discrimination At Issue.**

Congress's broad Section Five authority includes the power "to remedy and to deter violation of rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 81(2000). The enforcement power gives Congress the ability to "prohibit[] conduct which is not itself unconstitutional." *Boerne*, 521 U.S. at 518; accord *National Ass'n of Bds. of Pharmacy v. Board of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1316(11th Cir. 2011). Given this broader sweep of the Section Five power, the inquiry that the Supreme Court requires is whether there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Boerne*, 521 U.S. at 520. Put another way, "the question is not whether Title II exceeds the boundaries of the Fourteenth Amendment, but by how much." *Constantine*, 411 F.3d at 490.

Title II prohibits only discrimination "by reason of…disability," 42 U.S.C. §12132, so that the States retain their discretion to exclude persons from programs, services, or benefits for any lawful reason unconnected with their disability or for no reason at all. Further, even though Title II requires States to take some affirmative steps to avoid discrimination, it "does not require States to compromise

22

their essential eligibility criteria," requires only "'reasonable modifications' that would not fundamentally alter the nature of the service provided," and does not require States to "undertake measures that would impose an undue financial or administrative burden….or effect a fundamental alteration in the nature of the service," *Lane*, 541 U.S. at 531-532; see *Hibbs,* 538 U.S. at 735-737. Congress and the Supreme Court have long acknowledged the Nation's "history of unfair and often grotesque mistreatment'" of persons with disabilities. *Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 454(1985)(Stevens, J., concurring). Title II's application to public services is congruent and proportional because, among other reasons, a simple ban on discrimination would have frozen in place the effects of States' prior exclusion and isolation of persons with disabilities. *Hibbs,* 538 U.S. at 736-737.

Congress found that people with disabilities have been subjected to systematic discrimination in a broad range of public services. 42 U.S.C. §12101(a)(3). Title II's application to public services, thus, is part of a broader remedy to a constitutional problem that is greater than the sum of its parts. That is, comprehensively protecting the rights of individuals with disabilities in the public services context directly remedies and prospectively prevents the persistent imposition of inequalities on a single class, *Lane*, 541 U.S. at 522-529, and the chronic distribution of benefits and services in a way that "impos[es] special

disabilities upon groups disfavored by virtue of circumstances beyond their control," *Plyler v. Doe*, 457 U.S. 202, 216 n.14 (1982).

In *Florida International*, this Court held that Title II validly abrogated sovereign immunity where the right to education was at stake—a right not subject to heightened scrutiny. *Ass'n for Dis. Amer. v. Fla. Intern. Univ,* 405 F.3d 954, 957-959 (11th Cir. 2005). The Court recognized that "the constitutional right to equality in education, though not fundamental, is vital to the future success of our society." Id. at 958. Denying disabled persons access to that right "affects [their] future ability to exercise and participate in the most basic rights and responsibilities of citizenship, such as voting and participation in public programs and services." Id. at 959

### 6. The State Sovereign Immunity Doctrine Does Not Bar The ADA Claims Nor 1983 Claims Nor ADA Claims

Eleventh Amendment immunity derives not from the Amendment, but from the structure of the original Constitution. *Alden v. Maine,* 527 U.S. 706, 728 (1999). To determine whether there was a surrender of immunity in a specific situation, courts examine history and experience and the established order of things as well as the fundamental postulates implicit in the constitutional design. *Alden*, 527 U.S. at 727, 729. As such, the text of the Amendment is not dispositive, *Hans v. Louisiana,* 134 U.S. 1, 15 (1890); *Alden*, 527 U.S. at 727, 730. There are four situations in which state sovereign immunity cannot be invoked in federal court.

The first three are exceptions to the rule: congressional abrogation, the Ex Parte Young exception, and voluntary waiver. The fourth—when the entity sued is not an "arm of the state"—is less an exception than it is a case where immunity is not applicable in the first place, because the state is technically not being sued.

Congress has the ability to abrogate sovereign immunity and compel a state to court if two conditions are met. First, Congress must have "unequivocally expressed its intent to abrogate the immunity. *Seminole Tribe*, 517 U.S. at 55. That intent is sufficiently clear if it is obvious from 'a clear legislative statement *Seminole Tribe*, 517 U.S. at 55 which must be more definitive than a "general authorization for suit in court. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238-239 (1985). In addition to an unequivocal expression of intent to abrogate, Congress must have acted "pursuant to a valid exercise of power"—that is the relevant statute must have been "passed pursuant to a constitutional provision granting Congress [the] power [to abrogate.]"  Id. at 55 (quoting *Mansour*, 474 U.S. at 68), 59. The Fourteenth Amendment may be appropriately unique in this regard, because, unlike other parts of the Constitution, "the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment and the ratification of the Constitution, operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." Id. at 65-66. With respect to Title II of the ADA, it is clear Congress intended to

abrogate the State's Eleventh Amendment immunity. 42 U.S.C. §12202; *U.S. v. Georgia,* 546 U.S. 151, 154 (2006). Congress also wrote the following language into Section 12202 of the ADA: "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court…for a violation of" the ADA. 42 U.S.C. §12202.

The second prong of the analysis, whether Congress has acted pursuant to a valid grant of constitutional authority, begins with the determination of the Congressional authority pursuant to which Congress has purported to act. The source of authority that has thus far been recognized as sufficient to enable Congress to abrogate Eleventh Amendment immunity is Section 5 of the Fourteenth Amendment which grants Congress the "power to enforce, by appropriate legislation, the provisions of this article." U.S. Const., Amdt. 14, §5. Congress authority to enact appropriate enforcement legislation is not limited to simply repeating that which is already prohibited by the specific terms of the Fourteenth Amendment. Congress may "prohibit[ ] a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment"s text." *Nevada Dep't. of Human Resources v. Hibbs,* 538 U.S. 721, 727 (2000). However, §5 cannot be used to "effect a substantive change in the governing law." *City of Boerne v. Flores,* 521 U.S. 507, 519 (1997). Section 5 does, however, authorize Congress to enact prophylactic legislation aimed at deterring future or remedying

26

past unconstitutional conduct, although "the appropriateness of the remedy depends on the gravity of the harm it seeks to prevent." *Tennessee v. Lane,* 541 U.S. 509, 523 (2004). For §5 legislation to be valid, it must exhibit "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Boerne*, 521 U.S. at 520 (1997); *Hibbs,* 538 U.S. at 728. Furthermore with respect to Title II of the ADA, the test is applied not to the legislation as an undifferentiated whole, but rather to the specific context in which the issue arises. *Lane*, 541 U.S. at 531-32.

Title II of the ADA prohibits disability discrimination by a "public entity" with respect to its programs, services, or activities. 42 U.S.C. §12132. The plaintiffs in *Tennessee v. Lane*, 541 U.S. 509 (2004) were individuals with mobility impairments who were unable to access the state court system because the courthouses lacked elevators or other features that would make them accessible. As in *Board of Trustees v. Garrett*, 531 U.S. 356 (2001), the Court first identified the constitutional rights that Congress sought to enforce when it enacted Title II of the ADA. However, while the Court acknowledged that Title II, like Title I, sought to enforce the Equal Protection guarantees of the Fourteenth Amendment, it recognized that Title II extended much further, implicating the Due Process Clause as well as other constitutional rights incorporated by that clause into the Fourteenth Amendment. Id. at 524-25.

27

The third and final prong of the analysis was "whether Title II is an appropriate response to this history and pattern of unequal treatment." Id. at 530. However, unlike its treatment of Title I, the Court declined the petitioner"s invitation to consider Title II as an undifferentiated whole. Id. Rather, the Court viewed the question in the case as "whether Congress has the power under §5 to enforce the constitutional right of access to the courts." Id. at 531. Focusing on the fact that the statute requires states to make only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service," the Court concluded that Title II, as applied to the facts of this case, was "a reasonable prophylactic measure, reasonably targeted to a legitimate end." Id. at 532-33.

While noting the disagreement among members of the Court "regarding the scope of Congress's "prophylactic enforcement powers under §5 of the Fourteenth Amendment," the Court also pointed out that there was no disagreement that §5 grants Congress the power to create private remedies for conduct that actually violates the substantive provisions of the Fourteenth Amendment. *U.S. v. Georgia,* 546 U.S. at 158. Therefore, "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Id. at 159.

Second, while state officials can generally invoke sovereign immunity when sued in their official capacity, suits against state officials in their official capacity are barred because these suits represent only another way of pleading an action against an entity of which an officer is an agent, they cannot do so in one specific instance. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In *Ex Parte Young*, the Supreme Court held that a private litigant can bring suit against a state officer for prospective injunctive relief in order to end "a continuing violation of federal law." 209 U.S. 123 (1908). A state official who enforces "'an unconstitutional legislative enactment….comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 254 (2011) (quoting *ex Parte Young*, 209 U.S. at 159-60). Note also that a state is not a "person" suable under §1983. See *Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989). State officials sued in the official capacity are persons under §1983 but are entitled to sovereign immunity, because the suit is functionally a suit against the state. *Hafer v. Melo,* 502 U.S. 21 (1991*). Lewis v. Clarke*, 581 U.S. 155,165 (2017) also fleshed out this distinction between individual and official suits, holding that sovereign immunity does not shield state

officials when sued in their personal or individual capacity, even if the state would indemnify that employee. Borrowing from "arm-of-the-state" principles, the Court reasoned that the "critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab."

To determine when Ex Parte Young applies, courts perform a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Compare *Verizon Md. Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (allowing suit against a state official that, the plaintiff pled, did not produce medical records as required by federal law and seeking production of those medical records) with *Edelman v. Jordan,* 415 U.S. 651(1974)(not allowing exception where the injunctive relief sought was to obtain payment from State treasury, i.e., not properly characterized as prospective). The Supreme Court has stressed that the focus of the inquiry is the relief sought, not who is bringing the claim. *Stewart*, 563 U.S. at 256-57 (allowing an independent state agency to suit state officials for production of documents). Appellant's complaint alleges ongoing violation of federal law and seeks relief properly characterized as prospective as no matter the request by Appellant for reasonable accommodation, whether it be a simple continuance for urgent health matters which has arisen before Appellant suffered brain trauma, prevention of disclosure and maintenance

of the confidentiality of his medical records, Appellant providing the availability of

equal services that will address harassing and unlawful conduct and Appellees

refused to even discuss requests as part of an interactive process and instead denied

all requests.

Eleventh Amendment immunity does not extend to all "lesser entities"

associated with the state; rather it extends only to entities that the Court considers

to be "arms" or "instrumentalities" of the state. *Alden,* 527 U.S. at 756. The Court,

by its own admission, has yet to provide a comprehensive test here, although it has

directed courts to at least examine the "relationship between the sovereign and the

entity in question" (*Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997)

and the "essential nature and effect of the proceeding." Id. Varying weight has

been given to two factors: the degree of state control over the entity and the state-

law classification of the entity. *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S.

30, 51 (1994). The only factor singled out as "of considerable importance" is

whether the state is "obligated to bear and pay [any potential legal] indebtedness of

the [entity]."Id. For this reason, towns, counties and other political subdivisions of

the state cannot invoke sovereign immunity in federal courts, even if they exercise

a "slice of state power." *Northern Insurance Co. v. Chatham County,* 547 U.S.

189, 193 (2006). Also, because indemnification does not affect the legal obligation

to pay, the inquiry is unchanged when a third party would indemnify the relevant

entity (*Doe,* 519 U.S. at 429-31), where the Court found a state university to be an arm of the state in an action brought by a state employee, even when the Federal Government had agreed to indemnify the state) or when the state would indemnify a state official in a suit against him in his individual capacity. *Lewis,* at 9. If the facts do not indicate a clear answer, then the "twin purposes of the Eleventh Amendment" determine the question: does granting immunity protect the state's dignity and its treasury? *Hess*, 513 U.S. at 51. Thus, in *Hess v. Port Authority Trans-Hudson Corporation*, when indicators of immunity proved inconclusive, the Court found that the entity was not an arm, based almost exclusively on the entity's "anticipated and actual financial independence" and its "long history of paying its own way." Id. at 50. The State Bar has a long history of paying its own way.

### 7. Discovery Was Necessary To Address Appellees Factual Challenge To The Rehabilitation Act Claim

Under the Rehabilitation Act, a state waives its sovereign immunity if it receives federal financial assistance. *Garrett v. Univ. of Ala. Birmingham Bd. of Trs.,* 344 F.3d 1288, 1290–91(11th Cir. 2003) 42 U.S.C. §2000d-7. Appellant alleged Appellees receive federal financial assistance. 2-ER236; SAC ¶276-277. Appellees Rule 12(b)(1) motion raised a "factual challenge" to the Court's jurisdiction over the Rehabilitation Act claim—namely that they did not receive federal funding. The District Court should not have considered any purported extrinsic facts. *Houston v. Marod Supermarkets, Inc.,* 733 F.3d 1323, 1336 (11th

Cir. 2013). Appellant should have been given an opportunity to conduct jurisdictional discovery prior to the dismissal. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) Where Appellees raise factual challenges on sovereign immunity grounds—a district court may order limited discovery before deciding whether sovereign immunity requires dismissal. *Douglas v. United States*, 814 F.3d 1268, 1281 (11th Cir. 2016).

### 8. Appellant Was Entitled To Seek Monetary Damages

Appellant was entitled to seek monetary damages against the State Bar and State Bar Non-Board Appellees because he alleged they acted with deliberate indifference in denying Appellant reasonable accommodations and in committing discriminatory acts against him in an egregious manner. *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98, 111–12 (2d Cir. 2001) (cited for the proposition that a private suit brought pursuant to Title II of the ADA for monetary damages can be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability); *Bartlett v. N.Y. State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998) (cited for the proposition that under section 504 of the Rehabilitation Act a plaintiff can seek monetary damages if they plead and prove an "intentional violations" of the Rehabilitation Act)).

To recover monetary damages under Title II of the ADA, a plaintiff must establish intentional discrimination. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) ("compensatory damages are not available under Title II . . . absent a showing of discriminatory intent"). "Intentional discrimination" in this context involves "deliberate indifference" to a person's need for an accommodation. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001). To establish deliberate indifference, a plaintiff must show (1) "knowledge that a harm to a federally protected right is substantially likely" and (2) "a failure to act upon that likelihood." Id. at 1138. Appellant alleged the Appellee State Bar and State Bar Non-Board Defendants intentionally discriminated against Appellant by using his history of episodic neurological events as well as a perceived mental health impairment, as grounds to deny and then severely and unnecessarily restrict his rights and his liberty interest in pursuing her career free from discrimination. 2-ER232;SAC ¶251. Appellant's allegations that his extensions were not granted and that the State Bar did not impose discipline on other attorneys alleges a deliberate indifference and intentional violations. Therefore, Appellant was entitled to seek monetary damages against Appellee State Bar and State Bar Non-Board Appellees.

## B. The District Court Erred Dismissing The 1983 Claim In The First Amended Complaint

In dismissing Appellant's 1983 claim in the FAC, the District Court stated the Ninth Circuit has repeatedly held that the State Bar is an arm of the state and is

therefore entitled to sovereign immunity. See, e.g., *Hirsh v. Justices of the Supreme Ct. of Cal., et al.,* 67 F.3d 708, 715 (9th Cir. 1995*); Lupert v. Cal. State Bar,* 761 F.2d 1325, 1327 (9th Cir. 1985). However here as well the District Court's Georgia analysis focused only on the second part of the Georgia test, but this part of the Georgia test cannot stand alone as a reason to dismiss a claim on sovereign immunity grounds.

The right of privacy is comprised two separate interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599-600 (1977) Most circuits appear to apply an "intermediate standard of review" for confidentiality violations, see *Barry v. City of New York,* 712 F.2d 1554, 1559 (2d Cir.), cert. denied, 464 U.S. 1017 (1983), with a compelling interest analysis reserved for "severe intrusions" on confidentiality. *Thorne v. City of El Segundo,* 726 F.2d 459, 469 (9th Cir.1983), cert. denied, 469 U.S. 979 (1984); *Whalen,* 429 U.S. at 606–07. Because privacy regarding matters of health is closely intertwined with the activities afforded protection by the Supreme Court, Courts have held that "there is a constitutional right to privacy that protects an individual from the disclosure of information concerning a person's health." *Herring v. Keenan,* 218 F.3d 1171, 1172 (10th Cir. 2000) Herring, 218 F.3d at 1173. Courts have applied this right in the context of an

employer's search of an employee's medical records, *Lankford v. City of Hobart,* 27 F.3d 477, 479 (10th Cir.1994), and in the context of a government official's disclosure of a person's HIV status. *A.L.A. v. West Valley City,* 26 F.3d 989 (10th Cir.1994). Other circuits have recognized a constitutional right to privacy in medical records despite the fact these cases did not involve the level of the Appellee State Bar's egregious conduct. ER-52-54,57-58,66; FAC ¶¶12, 13,14, 17, 34, 36, 75-81); D*oe v. City of N.Y.,* 15 F.3d 264, 267 (2d Cir.1994); *Pesce v. J. Sterling Morton High Sch.,* 830 F.2d 789, 795–98 (7th Cir.1987) and *U.S. v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577–80 (3d Cir.1980)(all recognizing constitutional right to privacy regarding medical records) and *Borucki v. Ryan,* 827 F.2d 836, 840–49 (1st Cir.1987)

Under *Monell v. Department of Social Services,*"[l]ocal governing bodies . . . can be sued directly under §1983 for monetary, declaratory, or injunctive relief where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690. (1978). In order for liability to attach under Monell, a plaintiff must allege that a local government itself caused or participated in the deprivation of his or her rights. Id. at 694. A plaintiff's Monell claim against a municipality is proper when execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury.

*League of Women Voters of Chi. v. City of Chi.,* 757 F.3d 722, 727 (7th Cir. 2014)

There are three ways in which Defendant can be held liable under Section 1983." Id. Plaintiff must prove: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Id. There is no heightened pleading standard for *Monell* claims, *Estate of Sims ex rel. Sims v. Cty. of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007). In order to sustain a Monell claim against Defendant, Appellant must allege that his injury was caused by Defendant's policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. The policy, custom, or practice also "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Corr. Med. Serv. of Ill., Inc*., 368 F.3d 917, 927 (7th Cir. 2004) Appellant alleged the Appellee State Bar 's policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. 2-ER52-55,57-58;FAC ¶¶ 10-21,34-37.

**C. The Equal Protection Claim under 42 U.S.C. §1983 Is Not Barred By The Eleventh Amendment As Appellant Alleged Prospective Relief**

The SAC also alleged 42 U.S.C. §1983 claims seeking prospective relief. "[T]he line between retrospective relief and prospective relief can blur." *Lund v. Cowan,* 5 F.4th 964, 970 (9th Cir. 2021). "Relief that in essence serves to compensate a party injured in the past" is seen as retrospective while "relief that serves directly to bring an end to a present violation of federal law" is seen as perspective. *Papasan v. Allain*, 478 U.S. 265, 278 (1986). Appellant primarily sought an order enjoining the State Bar to re-open the grievances against various attorneys and an order enjoining State Bar Non-Board Appellees to disclose to Appellant the reasons his past grievances against those attorneys were dismissed.

To state a Section 1983 claim, Plaintiff must allege: a deprivation of federal rights; by a person acting under color of state law. 42 U.S.C. §1983; *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999) Section 1983 provides redress not just for constitutional violations but also for violation of federal statutory law. Sovereign immunity does not bar suits against officials in their personal capacities for actions taken under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 166-167 (1985). This claim was against the State Bar Appellees in their individual capacity. 2-ER170-172;SAC ¶¶3-19.

The Equal Protection Clause reaches only state actors, but Section 1983 equal protection claims may be brought against individuals as well as

38

municipalities and certain other state entities. *West v. Atkins,* 487 U.S. 42, 48–51 (1988)). States must treat "all persons similarly situated" alike. *Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. at 439 (1985). "Discriminatory purpose…implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group[.]" *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir.1988). Appellant had standing to assert the section 1983 claims because he is the person aggrieved by Appellees selective enforcement of ethics rules. This discrimination has left Appellant with no means of finding redress for the illegal, defamatory, unethical, and abusive conduct of Appellees and attorneys named, which threatens to be ongoing due since all the parties are still involved in litigation.

The Equal Protection Clause of the Fourteenth Amendment provides that no "State [shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir.2006). "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential

treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id*. Appellant alleged a "class of one" claim specified others "similarly situated" that could serve as comparators.2-ER-211-212; SAC ¶¶169,171-173.

While ordinarily a plaintiff has no interest in the discretionary conduct of a prosecutor, a plaintiff does have an interest in the equal treatment and equal enforcement of the laws under section 1983 and the Constitution; and where there is outright discrimination, corruption, and wrongdoing done by authorities in their discretionary conduct, a cause of action and standing must be available. Webster v. City of Houston, 689 F.2d 1220,1233-35 (5th Cir. 1982). Appellant was not complaining Appellees did not process his grievances to his satisfaction, he merely asks his Grievances be treated fairly and in a similar fashion to the grievances he made and retaliation damages and attorney fees. 2-ER237(Claim 1-II; para. a-f).

Appellant had standing in this case because he suffered an injury in fact. To show that he has suffered an injury in fact, a plaintiff must show that there was "an invasion of a legally protected interest which is concrete and particularized[] and actual or imminent." *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550 (5th Cir. 2016). The discriminatory dismissal of Appellant's complaints against other attorneys constituted an injury in fact.

Appellees invaded Appellant's legally protected rights to free speech and equal protection under the law. Specifically, Appellant suffered the following injuries: (1) State Bar Appellees discriminated against Appellant by dismissing his complaints; (2) State Bar Appellees intentionally treated Appellant's complaints differently than the similarly situated complaints Appellant filed by determining that there was no just cause, despite the complaints containing the same core allegations of frivolous court filings as O'Melveny Myers LLP filed a frivolous vexatious litigant motion where they even sought monetary sanctions. 2-ER1961. This intentionally discriminatory conduct violated Appellamt's right to equal protection because the State Bar Appellees treated Appellant differently from similarly situated individuals by dismissing his complaints without consideration. Such claim alleged intentional discriminatory treatment of Appellant's Grievances and that Appellees' conduct imperiled Appellant's protected liberty interests in equal protection and free speech.

Appellant has standing in this case because Appellant's injury is fairly traceable to the conduct at issue. Although it is true that "a crime victim lacks standing to sue a prosecutor for failing to investigate or indict her perpetrator" because such claims lack causation and redressability, *Lefebure v. D'Aquilla, 15* F.4th 650, 654 (5th Cir. 2021), Appellant's claims do more than merely challenge prosecutorial discretion. Instead, Appellant seeks redress from State Bar

Appellees' intentionally discriminatory treatment of his complaints. Additionally, Appellant challenges discriminatory conduct by the Appellees as part of a non-adversarial process, which further differentiates it from an issue of prosecutorial discretion. Intentional discriminatory conduct by authorities acting in their discretionary capacity is different from a claim merely challenging discretionary action; *see Webster v. City of Houston*, 689 F.2d 1220, 1234 (5th Cir. 1982) (discussing the history of section 1983 claims, stating that "[t]he Forty-second Congress regarded such a failure to enforce state laws as the quintessential violation of the equal protection clause.").

Although "the law concerning 'class of one' equal protection claims is in flux," *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 888 (7th Cir. 2012), the 5th Circuit has recognized "class of one" equal protection claims, including in the context of selective enforcement. *See Mikeska v. City of Galveston*, 451 F.3d 376, 381 n.4 (5th Cir. 2006); *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012)? To establish a class of one equal protection claim, plaintiffs must demonstrate that they were intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. In this case, Appellant's claims are for a "class of one" equal protection violation because they satisfy these elements. State Bar Appellees intentionally discriminated against Appellant by treating his complaints differently from  others similarly situated.

42

Further, no rational basis exists for arbitrarily dismissing Appellant's grievances while considering other complaints against other attorneys for the same conduct. With this intentional discriminatory conduct, Appellees exacerbated Appellant's injuries. There is a direct causal relationship between State Bar Appellee's discriminatory conduct and the conduct's resultant violation of Appellant's right to equal protection and free speech. Further, Appellant's claims will allow his injuries to be redressed by remedying the treatment of his complaints which relief is prospective. To establish redressability, it must merely be likely that the injuries will be redressed by a favorable decision; the claims do not have to give rise to an exclusive remedy for the injuries. *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023. However, it is relevant to point out that this lawsuit is the only appropriate means to redress the injuries. The only forum for violations of the California disciplinary rules is through the complaint process. As a result, not only did Athe State Bar and CA Bar Non-Board Appellee's conduct cause Appellant's injuries, but those injuries are redressable through this lawsuit.

**D. The First Amendment Claim Under 42 U.S.C. §1983 Is Not Barred By The Eleventh Amendment As Appellant Alleged Prospective Relief**

Appellant alleged a plausible First Amendment Claim (under Ex Parte Young) against Appellees in their official capacity, seeking injunctive relief. To establish a First Amendment retaliation claim, a plaintiff must show: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused

43

him to suffer an injury that would chill a person of ordinary firmness from

continuing to engage in that activity, and (3) the defendant's adverse actions were

substantially motivated by the constitutionally protected conduct. *Keenan v.*

*Tejeda*, 290 F.3d 252, 258(5th Cir. 2002). Under the *Ex Parte Young* exception to

state sovereign immunity, a plaintiff's suit alleging a violation of federal law must

be brought against individual persons in their official capacities as agents of the

state, and the relief sought must be declaratory or injunctive in nature and

prospective in effect." *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052,

1054 (5th Cir. 1998). Appellant sought a declaratory judgment that Appellee

violated his First Amendment rights which prayer for relief is not retrospective

because it relates to an ongoing violation of Appellant's federal rights. He need not

wait until a prosecutor initiates adverse action to have standing to sue to protect his

First Amendment rights. *Steffel v. Thompson,* 415 U.S. 452, 459 (1974). Appellees

deprived Appellant of his right to freedom of speech insofar as Appellees actions

caused Appellant to suffer an injury that would chill the speech of a person

of ordinary firmness from continuing to engage in filing grievances under the

California Bar grievance process. 2-ER210-211; SAC ¶167 Appellant engaged in

protected activity when he spoke up as a concerned citizen on matters of public

concern-i.e., false representations, threats, and other misconduct by multiple

attorneys.  Appellee State Bar picks and chooses who to file disciplinary charges

against, based on prominence, popularity, political affiliation, and professional association. He alleged his desire to continue to be a vocal opponent of the California State Bar and the continued efforts of such Appellees unlawful pursuit and regulation of protected speech. These allegations established "a likelihood of future injury" sufficient to give Appellant standing to seek declaratory and injunctive relief. *Hodgers-Durgin v. De La Vina,* 199 F.3d 1037, 1044 (9th Cir. 1999).

**E. The Third, Fourth, and Fifth Causes of Action Alleges A Claim Since The California State Bar Compels Membership and Payment of Dues And The First Amendment Prohibits A State From Compelling Attorneys To Join And Fund A State Bar Association That Engages In Extensive Political and Ideological Activities**

These claims were brought against the California Bar Board Members and the California Supreme Court. As required by state law, as a member of the bar Appellant must pay annual dues to the State Bar of California as a condition of practicing law. The Supreme Court has to date assumed integrated, mandatory bar associations efficiently, effectively, and (for the most part) non-controversially manage the core functions related to regulation of the legal profession. *Lathrop v. Donohue*, 367 U.S. 820, 843 (1961); *Keller v. State Bar of California*, 496 U.S. 1,5,13(1990)

California's bar association perceives their role as general guardians of the legal system and often extend their reach into political and ideological activities

while couching their involvement under innocuous-sounding phrases. Yet virtually all matters involving the legal system, occupational governance and public policy are inherently and "overwhelmingly" political "matters of great public concern" because they involve the allocation of public money and collateral policy matters. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.,* Council 31, 138 S. Ct. 2448, 2475–77, 2480(2018).

*Janus* held that laws requiring non-union members to pay public-sector union fees are subject at least to "exacting scrutiny." 138 S. Ct. at 2465. *Keller* relied on established clear parallels between public sector unions and state bar associations when it held that attorneys regulated under state law are subject to "the same constitutional rule" that applies to public employees. 496 U.S. at 13. Therefore, subjecting mandatory bar associations to "the same constitutional rule" as public sector unions now means subjecting them to exacting scrutiny that reveals unjustifiable violations of attorneys' First Amendment rights. Thus this Court should review such compelled subsidies by Appellant for bar association speech under exacting scrutiny regardless of germaneness.

Appellant alleged Appellees continually engage in a wide range of political and ideological activities designed to implement the officials' view of a better society, just as public employee unions engage in a wide array of political activity to achieve workplace goals and their view of a better society. 2-ER187-191,215-

46

216;SAC ¶¶67-86,178-190. The *Janus* majority was silent as to that ruling's impact on mandatory bars, but the primary dissent acknowledged that, like Keller, the decision weaves together policies that underlie both agency fee and state bar cases. *Janus*, 138 S. Ct. at 2498 (Kagan, J., dissenting). In both contexts, *Janus* provides a greater understanding of the nature of the injury to individuals forced to support expressive activities against their will. See Keller, 496 U.S. at 12 ("There is…a substantial analogy between the relationship of the State Bar and its members, on the one hand, and the relationship of employee unions and their members, on the other."); *Gardner v. State Bar of Nevada*, 284 F.3d 1040, 1042 (9th Cir. 2002) ("[T]here is some analogy between a bar that, under state law, lawyers must join and a labor union with an agency shop.")

*Keller's* germaneness test fails the First Amendment doctrine announced in *Janus*. Applying *Janus's* articulation of First Amendment doctrine to mandatory bar associations naturally follows from the Court's precedent. First, *Janus* clarified that all advocacy relating to the allocation of public resources is inherently political, as well as speech on matters of "value and concern to the public." *Janus*, 138 S. Ct. at 2474–76 (listing examples including speech related to collective bargaining, education, child welfare, healthcare and minority rights, climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions). This is consistent with the Court's general understanding of the

vast range of what constitutes "political" expression. See, e.g., *Minn. Voters Alliance v. Mansky,* 138 S. Ct. 1876, 1888 (2018)("political" can be expansively defined to include anything "of or relating to government, a government, or [] governmental affairs" or the "structure of affairs of government, politics, or the state."); id. at 1891 ("All Lives Matter" slogan, National Rifle Association logo, rainbow flag all can be construed as political expression) Beyond the world of expressive activity that can be described as political, the compelled speech cases also protect individuals from being forced to associate with "ideological" expression, even though what is "ideological" can be tricky to pin down. *Romero v. Colegio Abogados Puerto Rico*, 204 F.3d 291, 302(1st Cir. 2000)(finding no "bright line between ideological and non-ideological" bar association speech).

At a minimum, therefore, "ideological" activities that cannot be funded with compelled fees include those seeking social change or "good" government. See *Crowe v. Oregon State Bar,* 989 F.3d 714, 721 (9th Cir. 2021)(Oregon State Bar seeks "fairness" in the way the world operates). These goals of social change, good government, and fairness permeate mandatory bars' mission statements and activities. Lawyers have ample alternative professional voluntary outlets to collectively express political or ideological views including national organizations such as the American Association for Justice (trial lawyers), and voluntary bars such as the California Young Lawyers Association. The State Bar of California

asserts a broad mandate to mold the laws and legal system to fit "their" political and ideological views. The common theme of California's Bar reflects dedication to general improvement of courts, laws, and lawyers—frequently denominated as the "administration of justice." Yet, in *Keller,* the Court held that a state bar's statutory mandate phrased in expansive platitudes such as "administration of justice" permits too broad an infringement on individual bar members' First Amendment rights because it allows the bar to speak on such wide-ranging and controversial issues as polygraph tests for state and local agency employees, possession of armor-piercing handgun ammunition and other gun control measures, a federal guest- worker program, a victim's bill of rights, abortion, public school prayer, and busing. *Keller*, 496 U.S. at 14–15. Regardless of whether these activities were legitimately described as pursuing the administration of justice, Appellees compulsory funding of these programs violated Appellant's First Amendment rights.

*Janus* held that a state law compelling non-union members to subsidize a public sector union's speech impinged on First Amendment rights to such an extent that courts must apply "exacting scrutiny" to determine whether the government can justify it. 138 S. Ct. at 2464–65. *Janus* defined exacting scrutiny in the compelled subsidy context as requiring that the state's mandate must "serve a compelling state interest that cannot be achieved through means significantly less

restrictive of associational freedoms." Id. The Courts should apply exacting scrutiny to mandatory subsidization of the state bar association to better define the scope and application of exacting scrutiny.

Exacting scrutiny lacks a precise definition and appears to be a type of balancing test that sometimes, but not always, falls short of strict scrutiny. The Ninth Circuit defines "exacting scrutiny" as "somewhat less rigorous judicial review…..which requires the government to show that the challenged [speech restrictions] are substantially related to a sufficiently important government interest." *Nat'l Ass'n for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102, 1112 (9th Cir. 2019). That court also has described "exacting scrutiny" as a "balancing test" where "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Mentele v. Inslee,* 916 F.3d 783, 790 (9th Cir. 2019). The Eighth Circuit says that exacting scrutiny requires a "substantial relationship to a sufficiently important governmental interest" where "the strength of the asserted governmental interest reflects the seriousness of the actual burden" on First Amendment rights. *Calzone v. Summers*, 942 F.3d 415, 423 (8th Cir. 2019)(en banc)(cleaned up). Much as the Keller decision downplayed the infringement caused by a politicized bar, the Second and Ninth Circuits have enabled speech restrictions to survive under "exacting scrutiny" by downplaying

the burden of speech restrictions and thus requiring a lesser state interest to outweigh that burden. See also *Taylor v. Buchanan*, 4 F.4th 406, 408–09 (6th Cir. 2021) (noting that "Lathrop and Keller are an insurmountable hurdle if they remain good law" and "doom" an attorney challenger's First Amendment claims). In *Janus*, this Court forcefully rejected earlier cases that elevated collective speech over individual expression. Understandably, the Court did not explore every possible application of the announced doctrine in other contexts. Public employees enjoy greater First Amendment protection for their right to speak than others such as Appellant, who remains compelled to subsidize the speech of others, even when he disagrees.

For a state officer to be a proper defendant for purposes of Article III, he or she need only play some "causal role in the plaintiffs' injury" and have the power to take some action to "redress [the] actual or threatened injury." *Okpalobi v. Foster*, 244 F.3d 405,426 (5th Cir. 2001). Appellant alleged on information and belief, the California State Bar uses funds to discriminate against attorneys as members of protected classes such as Appellant who are solo practitioners in violation of Federal civil rights laws. The State Bar Appellees had also taken an active role in abridging matters outside the courtroom in punishing free speech including such rights of Appellant. 2-ER224-225;SAC ¶219. He also alleged the State Bar Appellees discriminatory activities under the ADA as alleged above are

not germane to improving the quality of legal services and regulating the legal

profession but are instead illegal. 2-ER225; ¶220, see 2-ER189-190;¶80-86. Thus

Appellant did allege factual allegations in support of these claims.

### F. Appellant Alleged A Sherman Act Section 2 Claim and Appellees Are Not Immunized from Antitrust Liability Under the State Action Immunity Doctrine

Section 2 of the Sherman Act prohibits entities from monopolizing "any part

of the trade or commerce among the several States" or "with foreign nations." 15

U.S.C. §2. To succeed on a §2 monopolization claim, a plaintiff must prove "(1)

the possession of monopoly power in the relevant market and (2) the willful

acquisition or maintenance of that power as distinguished from growth or

development as a consequence of a superior product, business acumen, or historic

accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). A private

plaintiff seeking damages must also show that (3) "its injuries were caused by the

defendant's anticompetitive conduct." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d

1064, 1070 (10th Cir. 2013) 2-ER191-SAC¶¶87-97, 2-ER226-230; SAC¶¶ 226-

239.  In *Hallie* and in *Dental Examiners*, the Court focused on the risk of private

interests influencing a state entity's decisions. *Hallie*, 471 U.S. at 45;

*Dental Examiners*, 574 U.S. at 507–08. As a public entity, the State Bar is entitled

to a presumption that it acts in the public interest "absent a showing to the

contrary." *Hallie*, 471 U.S. at 45. However Appellant alleged the California State

Bar is influenced by and pursues outside private interests in permitting repeated illegal and unethical conduct.

Supreme Court precedent recognizes three tiers of protection from antitrust lawsuits under the state-action immunity doctrine: (1) clear exercises of a state's sovereign power are immune from federal antitrust scrutiny *ipso facto* ("*Parker* immunity"), *Dental Examiners*, 574 U.S. at 504 (discussing *Parker v. Brown*, 317 U.S. 341 (1943)); (2) acts of a "prototypical state agenc[y]" or municipality are entitled to immunity if pursuant to a clearly articulated and affirmatively expressed state policy to replace competition with regulation ("*Hallie* scrutiny"), *id.* at 504, 506–07, 511(quoting *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013))(discussing *Hallie*, 471 U.S. 34); and (3) actions by private parties or state agencies controlled by participants in the market they regulate are protected if they meet the aforementioned "clear articulation" requirement and are also subject to "active supervision" by the state ("*Midcal* scrutiny"), *id.* at 507, 135 S.Ct. 1101(discussing *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980). Because "[s]tates regulate their economies in many ways not inconsistent with the antitrust laws," "state-action immunity is disfavored." *Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 398–99(1978)). *Ipso facto Parker* immunity applies only for "[s]tate

legislation and decisions of a state supreme court, acting legislatively rather than judicially." *Dental Examiners*, 574 U.S. at 504.

Anticompetitive conduct by a non-sovereign actor must be clearly articulated and affirmatively expressed as state policy to merit state-action immunity. *Midcal*, 445 U.S. at 105. This inquiry involves two distinct questions: (1) Does state law authorize the defendant to engage in the challenged conduct?; and (2) Did the state authorize the challenged conduct with an intent to *displace competition* with regulation or monopoly service? 1A PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW, ¶225, p. 140 (4th ed. 2013) ("Areeda & Hovenkamp");*Phoebe Putney*, 568 U.S. at 228. State lawmakers need not "expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects." *Hallie*, 471 U.S. at 43. Rather, state-action immunity applies if the anticompetitive effect was the "foreseeable result" of the state's authorization. *Id.* at 42. "[W]hen anticompetitive consequences are simply one 'foreseeable' possibility among many, then authorization should not be inferred." AREEDA & HOVENKAMP at ¶ 225, p. 170 (discussing *Phoebe Putney*, 568 U.S. 216).

To warrant state-action immunity, the alleged anticompetitive effect—the displacement of competition in the legal market—must be the "inherent, logical, or ordinary result" of the state's authorization. *Phoebe Putney*, 568 U.S. at 229.

54

Precedent establishes that mere authorization to participate in a market does not constitute authority to monopolize that market. *See id.* at 228; *Hammond*, 171 F.3d at 235 (distinguishing "a statute that in empowering a municipality necessarily contemplates the anticompetitive activity from one that merely allows a municipality to do what other businesses can do").

Appellant alleged repeated instances of Appellees willfully allowing unlawful and unethical anticompetitive conduct. 2-ER226-229;SAC ¶¶227-233. Accepting these factual allegation as true, Ashcroft v. Iqbal, 556 U.S. 662,678, no statutory authority permits displacement of competition in the market for such illegal and unethical conduct."[E]ven a lawful monopolist may be subject to antitrust restraints when it seeks to extend or exploit its monopoly in a manner not contemplated by its authorization." *La. Power & Light Co.*, 435 U.S. at 417. The California Legislature did not authorize the California Bar's entry into and enforcement conduct with the intent to displace competition in the market for legal services while allowing illegal acts by Airbnb and several law firms (2-ER231;SAC ¶172) thus no state-action immunity exists.

In *Parker v. Brown*, the Supreme Court held that the antitrust laws confer immunity to anticompetitive conduct by the States, when acting in their sovereign capacity. "State legislation and 'decision[s] of a state supreme court, acting legislatively rather than judicially,' will satisfy this standard, and '*ipso facto* are

exempt from the operation of the antitrust laws' because they are undoubted exercise of state sovereign authority." *Bd. of Dental Examiners,* 135 S. Ct. at 1110 (citing *Hoover v. Ronwin*, 466 U.S. 558, 568 (1984)). A private defendant will also enjoy immunity if relief is sought solely for injury as to which the state would enjoy immunity under *Parker. Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988)). However, this immunity is not all-encompassing with regards to any and all state government related conduct. Where a state delegates control over a market to a non-sovereign actor, such as a state regulatory agency, *Parker* immunity may not attach. *Bd. Of Dental Examiners*, 135 S. Ct. at 1111; *Phoebe Putney*, 133 S. Ct. at 1010 (2013)(citing *Hoover*, 466 U.S. at 568)(Given the fundamental national values of free enterprise and economic competition embodied in the federal antitrust laws, "[c]loser analysis is required when the activity at issue is not directly that of the State itself, but rather "is carried out by others pursuant to state authorization."). In instances where a non-sovereign is delegated authority to regulate a market, the court will examine whether the non-sovereign's actions are the product of procedures that suffice to show the conduct in question should be deemed the State's own. *Bd. of Dental Examiners,* 135 S. Ct. at 1111 (citing *Midcal,* 445 U.S. 97, 106 (1980). The Supreme Court has articulated a two-part test for this analysis: "A state law or regulatory scheme cannot be the basis for antitrust

immunity unless, first, the State has articulated a clear policy to allow the anticompetitive conduct, and second, the State provides active supervision of [the] anticompetitive conduct." *Bd. Of Dental Examiners*, 135 S. Ct. at 1112 (citing *Midcal*, 445 U.S. at 105). The state bar's regulatory scheme fails to satisfy either part of the *Midcal* test. The state laws regulating the State Bar is not a "clear articulation" of state policy to allow anticompetitive conduct insomuch as "*Midcal's* clear articulation requirement is satisfied 'where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature."*Bd. of Dental Examiners*, 135 S. Ct. at 1112. The Appellees unlawful conduct alleged does not flow from any legislative authority and clearly has an anticompetitive effect.

As to the second *Midcal* prong, the active supervision rule "stems from the recognition that where a private party is engaging in anticompetitive activity, there is a real danger that he is acting to further his own interest, rather than the governing interest of the state." *Bd. of Dental Examiners*, 135 S. Ct. at 1112. There are, however, instances in which an actor can be excused from *MidcaVs* active supervision requirement. *See id.; Town of Hallie v. Eau Claire*, 471 U.S. 34, 45 (1985). Subsequently, in *Board of Dental Examiners*, the Court clarified *Town of Hallie*, and specifically elaborated on the Court's assessment of the role of state agencies. *See* 135 S. Ct. at 1112-14. The Supreme Court explained that the formal

57

designation of a state agency, as such, is not dispositive for determining whether its actions could be immunized under *Parker. Id.* at 1114. Rather, the analysis must turn on "the risk that active market participants will pursue private interests in restraining trade." *Id.* Specifically, the Court found that the North Carolina Dental Board, while a state agency, was controlled by individuals and entities involved in the dental industry. "State agencies controlled by active market participants, who possess singularly strong private interests, pose the very risk of self-dealing *Midcal's* supervision requirement was created to address." *Id.; accord Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791 (1975)("The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members."). Consequently, the Court's holding finding the actions of the board were not protected under *Parker* turned on its assessment of the lack of state supervision. Appellant alleged such lack of supervision. He also alleged the California Bar is controlled by Airbnb and large law firms and actively pursuing anticompetitive conduct for its own private interests.

In *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 790 (1975), the Court held Section 1 of the Sherman Act was violated by the publication of a minimum-fee schedule by a county bar association and by its enforcement by the State Bar. The schedule and its enforcement mechanism operated to create a rigid price floor for

58

services and thus constituted a classic example of price fixing. Id. Both bar association argued that their activity was shielded by the state-action exemption. Id. The Supreme Court concluded that the action was not protected, emphasizing that 'we need not inquire further into the state action question because it cannot fairly be said that the State of Virginia through its Supreme Court Rules required the anticompetitive activities of either respondent. Id.

The California Supreme Court is the real party in interest; it adopted the rules, and it is the ultimate trier of fact and law in the enforcement process. *In the Matter of Wilson,* 106 Ariz. 34 (1970). Although the State Bar Appellees play a part in the enforcement of the rules, its role is completely defined by the court; the State Bar is supposed to act as the agent of the court under its continuous supervision but this is not true as alleged. State Bar Appellees anticompetitive conduct and application of rules is not subject to pointed re-examination by the California Supreme Court but applied on an ad hoc basis.

### G. Appellant Should Have Been Granted Leave To Amend the Complaint

The U.S. Supreme Court, the Ninth Circuit, and this Court have repeatedly reaffirmed that leave to amend is to be granted with extreme liberality. DCD *Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Foman v. Davis,* 371 U.S. 178, 182 (1962)(leave to amend should be freely given); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003)("Absent

59

prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."). The primary factors relied upon by the Supreme Court and the Ninth Circuit in denying a motion for leave to amend are "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs*, 833 F.2d at 186. The District Court granted Appellant leave to amend the first amended complaint but each of the remaining claims were new and Appellant should have been granted leave to amend such new claims the second amended complaint once.

## CONCLUSION

For the foregoing reasons, the District Court's orders dismissing Appellant's claims vacated and the case remanded to the District Court for further proceedings and such other relief.

Date:   November 12, 2024

                                        Respectfully,

                                        /s/*Michael Mogan*_____
                                        Michael Mogan

## CERTIFICATION OF RELATED CASES

This certification is made pursuant to Rule 28-2.6, Ninth Circuit Court of

Appeals Rules. There are no related cases.

Dated: November 12, 2024

/s/*Michael Mogan*

Michael Mogan

Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1. This brief contains 13,992 words, excluding the portions exempted by Fed.R.App.P. 32(f), if applicable. The brief's type size and type face comply with Fed.R.App. 32(a)(5) and (6).

Dated: November 12, 2024

/s/*Michael Mogan*___
Michael Mogan
Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, I electronically filed this Appellant's Opening Brief for Appellant Michael Mogan with the Clerk of the Court of the U.S. Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system. All participants registered CM/ECF users, and will be served by the Appellate CM/ECF system.

I also hereby certify that on November 12, 2024 the following individual were served Appellant's Opening Brief via U.S. Mail:

Patricia Guerrero
Chief Justice of the California Supreme Court
Carol A. Corrigan
Goodwin H. Liu
Leondra R. Krugen
Joshua P. Groban
Martin J. Jenkins
Kelli Eva
Associate Justices of the California Supreme Court
California Supreme Court
350 McAllister Street, Room 1295
San Francisco, CA 94102

/s/*Michael Mogan*_____
Michael Mogan